GEORGE LOINAZ and IRENE DALIS LOINAZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Loinaz v. Commissioner
Docket Nos. 1359-68, 5845-68, 3543-69, 5747-69.
United States Tax Court
T.C. Memo 1975-17; 1975 Tax Ct. Memo LEXIS 357; 34 T.C.M. (CCH) 71; T.C.M. (RIA) 750017; January 28, 1975, Filed Arnold E. Bruno, for the petitioners. Powell W. Holly, Jr., and Kimball K. Ross, for the respondent. MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for the calendar years 1962, 1963, 1964, 1965, and 1966 in the amounts of $ 31,133.28, $ 20,419.50, $ 19,405.22, $ 20,444.77, and $ 33,519.12, respectively, and additions to taxes under section 6651(a), I.R.C. 1954, *358 [1] for the calendar years 1962 and 1963 in the amounts of $ 6,548.46 and $ 2,287.48, respectively. Some of the issues raised by the pleadings were conceded by respondent in whole or in part at the trial or on brief, leaving for our decision (1) the amounts of the travel and business expense deduction to which petitioner Irene Dalis Loinaz, an opera singer, is entitled for each of the years in issue; (2) the amounts of itemized deductions to which petitioners are entitled for the years 1962, 1963, 1965 and 1966; (3) whether a business operated by petitioner George Loinaz under the name of E. Braun & Co. is entitled to depreciation deduction in each of the years in issue and, if so, the amount of such deduction allowable; and (4) the amount of the deduction for business use of their home to which petitioners are entitled in 1962 and 1963. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in New York, New York at the time their petition with respect to the calendar years 1962 and 1963 was filed, and who resided in Demarest, New Jersey at *359 the time their petitions for the calendar years 1964, 1965, and 1966 were filed, filed joint Federal income tax returns for each of the years here in issue with the district director of internal revenue, Newark, New Jersey. Petitioner Irene Dalis Loinaz is an opera singer, and during each of the years here in issue sang at the Metropolitan Opera in New York during the New York Metropolitan season and also sang in the San Francisco Opera and at Bayreuth, Germany. In addition, she sang in various concerts and in certain years on Metropolitan Opera tours and on concert tours in various cities. Petitioner George Loinaz was employed during the years here in issue by McGraw Hill Publishing Company as an editor and translator. In addition, he owned certain real estate and also operated a business in Newport, Rhode Island under the name of E. Braun & Co. During the years 1964 and 1965 George Loinaz resided in London, England, where he did his work as an editor and translator for McGraw Hill Publishing Company. His wife, Irene Dalis Loinaz, with their infant daughter would join him in London when she was not engaged in singing at the Metropolitan Opera or on one of her various tours. *360 During these years Mrs. Loinaz had no engagements to perform in London. Prior to the time that Mr. Loinaz was transferred by McGraw Hill to London, he and Mrs. Loinaz had maintained an apartment in New York, and after Mr. Loinaz was transferred to London, Mrs. Loinaz continued to maintain that apartment and she and her infant daughter lived in it during her appearances at the Metropolitan Opera. Generally, Mrs. Loinaz took her infant daughter with her on her various engagements and tours outside New York. Mrs. Loinaz employed a secretary whose work was entirely in connection with Mrs. Loinaz' profession as an opera singer. When Mrs. Loinaz went on an extended engagement, such as her German engagement, she took her secretary with her and the secretary performed only secretarial duties on the trip. Sometimes, Mrs. Loinaz also took with her a nursemaid for her infant daughter and sometimes she would employ a nursemaid when she arrived at the place where she had an extended singing engagement. For a number of years prior to 1962 Mrs. Loinaz had sung regularly every season at the Metropolitan Opera and she continued during each of the years here in issue to perform at the Metropolitan *361 each season. During each of the years here in issue Mrs. Loinaz' gross income from singing at the Metropolitan and her gross income from her various other engagements were in the following amounts: Income from
Income from
Year
Metropolitan
Other Engagements
1962
$ 17,457.00
7,800.00
1963
24,025.00
2,287.50
1964
16,350.00
13,500.00
1965
23.050.00
10,500.00
1966
40,050.00
13,000.00
On January 1, 1962, George Loinaz purchased from Robert Oser a business in Newport, Rhode Island known as "E. Braun & Co." The contract provided for the purchase of "all of the Seller's right, title and interest in the good will of the business conducted at 196 Bellevue Avenue, in said City of Newport, together with all the chairs, show cases, shelving, mirrors, linoleum, carpets, office furniture, electric light fixtures and all other furniture and fixtures used in said business," and that "the Purchasers shall pay for the said chairs, show cases, fixtures, etc. and the good will * * * the sum of $ 6,300.00 * * *." The contract also provided that "the Purchasers shall be allowed to use the name E. Braun & Co." and further, "The Purchasers covenant not to remove any *362 of the furniture and fixtures without the consent of the Seller until the said $ 6,300.00 has been paid in full." On their Federal income tax returns for the years 1962 through 1966 petitioners deducted business expenses for both Mr. and Mrs. Loinaz. Mrs. Loinaz' expenses were deducted under various categories, one being "Metropolitan," another "San Francisco," and certain expenses were listed on Schedule C dealing to a large extent with her concerts. She filed a separate schedule of German income and expenses. Each of these returns also contained a Schedule C for the income from the business known as E. Braun & Co. Petitioners' income tax returns for each of the years here in issue were prepared by Norman Egenberg. In 1967 and 1968 respondent's agents were investigating the activities of Norman Egenberg in connection with the preparation of income tax returns for others. Following these investigations Norman Egenberg was indicted and convicted for fraudulently preparing returns for certain individuals. In connection with the investigation by respondent's agents of the activities of Norman Egenberg, on the 27th day of December 1967 all of petitioners' records were subpoenaed, and *363 ultimately, after an order of the United States District Court for the District of Rhode Island requiring petitioners to do so, were turned over to respondent's agents on April 22, 1968. The records involved were for the years 1961 through 1966. On December 27, 1967, respondent issued a notice of deficiency to petitioners for the calendar years 1962 and 1963 in which he disallowed the expense deductions claimed on their returns for those years with the statement, "Due to your failure to substantiate expenses claimed on the returns, all expenses are being disallowed." The notice further stated that "Taxpayers have refused to execute consent Form 872, extending Statutory Period for Assessment." For the years 1964 through 1966 respondent issued notices of deficiency to petitioners while his agents still had petitioners' books and records in their custody and respondent retained custody of those books and records until shortly before the trial of these cases, which commenced on March 6, 1973, when respondent, pursuant to order of this Court, returned to petitioners documents which he represented as being all of the books and records of petitioners which had been subpoenaed from petitioners *364 and turned over to respondent's agents. However, certain documents were obviously missing from the documents turned over since the original document would not be present but there would be a copy of the document in respondent's files. ULTIMATE FINDINGS OF FACT (1) The following schedule shows a list of the amounts of expenditures by items made by Irene Dalis Loinaz in connection with her trade or business of being an opera singer in the years indicated: 1962
1963
1964
1965
1966
Transportation
$ 5,867.00
[1] $ 0
$ 1,169.00
$ 446.00
$ 0
Hotel and Lodging
1,877.00
0
1,709.00
420.00
0
Meals and
1,367.00
0
1,325.00
255.00
0
Subsistence
Excess Baggage
343.00
0
142.00
464.00
150.00
Commissions
4,515.00
2,602.50
3,275.00
2,705.00
4,000.00
Union Dues
443.00
336.25
250.25
344.50
411.00
Makeup,
626.00
682.98
951.00
400.00
463.00
Hairdressing, Wigs
Wardrobe and
655.00
275.00
1,176.50
302.00
941.00
Costumes
Theatrical Equipment
0
0
0
0
0
[2]
Music Scores,
676.00
428.13
279.00
220.00
100.00
Research
Publicity, Promotion
3,423.00
3,552.70
2,656.00
2,838.00
3,900.00
Entertainment and
1,898.00
1,967.00
3,425.00
1,730.00
2,590.00
Gifts
Gratuities
500.00
150.00
300.00
375.00
596.00
Telephone and
347.00
400.00
666.00
234.00
510.00
Telegraph
Postage and
263.00
145.65
334.00
149.00
99.00
Stationery
Professional
750.00
2,501.50
2,354.50
1,014.00
525.00
Training, Coaching
Accompanist
1,742.00
150.00
600.00
0
0
Studio Rental and
165.00
75.00
50.00
0
0
Utilities
Secretary and
495.00
2,860.00
3,549.00
3,141.00
3,116.00
Supplies
Auto Expense and
500.00
450.00
1,060.00
459.00
1,787.00
Rental and Taxis
Subscription to
250.00
254.85
125.00
122.00
148.00
Trade
Claque (paid
1,545.00
1,427.50
475.00
1,144.00
150.00
applauders)
Dressers
444.00
300.00
590.00
210.00
150.00
Maintenance
238.00
460.00
284.50
150.00
129.00
Insurance and
157.75
190.00
200.00
25.00
41.00
Repairs
Professional Fees
420.00
420.00
321.00
0
500.00
German Tour (total
3,685.35
3,370.00
0
4,806.00
[4] 6,674.00
expenses) [3]
Depreciation -
Costumes &
Theatrical
Equipment
1,278.00
900.00
1,690.00
1,112.00
1,600.00
*365 (2) The amount of travel expenses we have determined for the years 1963 through 1966 does not include meals, lodging or commuting expenses in New York City since, for the purposes of Federal income tax, Irene Dalis Loinaz' home was in New York City during these years. (3) The following schedule shows the itemized deductions to which petitioners are entitled for the years 1962 through 1966: 1962
1963
1964 [1]
1965 [2]
1966
Contribution
$ 100.00
$ 348.00
$ --
$ 220.00
$ 190.00
State Income Tax
1,645.05
1,901.90
--
--
1,927.66 [3]
State and Local
Taxes
150.00
150.00
Other Taxes
150.00
165.00
Medical Expenses
(prior to 3 per-
cent reduction)
1,987.37
1,788.90
Professional Fees
500.00
500.00
Interest
--
--
--
--
346.75 [4]
*366 (4) In addition to the expenses of E. Braun & Co., other than depreciation, which respondent now concedes are properly deductible, petitioner George Loinaz is entitled to a depreciation deduction office furniture and equipment for each of the years here in issue in the amount of $ 500. (5) In the years 1962 and 1963 petitioners George Loinaz and Irene Dalis Loinaz are entitled to deduct $ 350 for the use of their home for business purposes. (6) Petitioners are entitled to deduct $ 400 in each of the years 1962 and 1963 for business expenses of George Loinaz for telephone, secretarial services, stationery, and editing. OPINION Petitioners argue that the action of respondent in disallowing all of their claimed deductions for expenses in 1962 and 1963 was so arbitrary that no presumptive correctness should be given to the deficiency notice. From this petitioners conclude that respondent has the *367 burden of showing error in their claimed deductions. Petitioners argue that the deficiency notices for 1964, 1965, and 1966 are invalid because petitioners' books were in effect illegally seized and held by respondent when those books were used to determine deficiencies for these years. Petitioners base this conclusion on the fact that their books were subpoenaed in connection with the prosecution of Norman Egenberg, but used by respondent while in his possession to make a determination of petitioners' tax liability for the years 1964, 1965, and 1966. The result of the manner in which this case was handled was practically a courtroom audit of petitioners' income tax return for the year 1962. Although prior to the trial respondent conceded some minor amounts to be deductible expenses, most of the items we have found to be deductible for this year were proved by testimony and documentary evidence introduced at the trial. After the conclusion of receipt of evidence for the year 1962, the parties at the direction of the Court and after a pretrial hearing of which a record was made agreed to most of the deductible items for the years 1963 through 1966. As is apparent from our ultimate *368 findings, petitioners proved in court the deductibility of many expenses which they claimed on their returns to be deductible. While under some circumstances this fact would support petitioners' position that respondent's determination disallowing all deductions claimed for business expenses was arbitrary, respondent's action here must be viewed in light of the fact that petitioners were refusing to produce their books for respondent. Even though respondent was attempting to obtain petitioners' books and subpoenaed them in connection with an investigation of the person who had prepared their income tax returns, and petitioners were refusing to produce their books under the subpoena until directed to do so by a United States District Court on advice of counsel, the fact remains that petitioners' books were not available to respondent when he made the determination of petitioners' tax liability for the years 1962 and 1963. In the notice respondent stated that petitioners had refused to execute a consent extending the statutory period for assessment when the notice was issued and petitioners have not denied this fact. However justified petitioners might have considered their refusal *369 to produce their books for respondent in connection with respondent's investigation of the preparer of their tax returns, Norman Egenberg, the fact remains that their books were not available to respondent when he issued his notice of deficiency for the years 1962 and 1963. When this fact is considered in conjunction with the fact that petitioners refused to execute a consent extending the statute of limitations, in our view respondent's action in disallowing all the deductions claimed by petitioners for 1962 and 1963 is not arbitrary as a matter of law. To hold otherwise would permit a taxpayer to effectively prevent an audit of his tax return by respondent possibly to his own advantage. While it is unfortunate that there was not more cooperation between petitioners' and respondent's representatives in arriving at the amount of deductions to which petitioners were entitled after respondent had petitioners' records available to him, any action by respondent's agents subsequent to the issuance of the notice of deficiency does not cause the notice to be invalid. In reaching our conclusion we have not overlooked the fact that, whether or not justifiably, petitioners sincerely believe *370 that certain of respondent's agents threatened them and attempted to intimidate them solely because their returns had been prepared by Norman Egenberg. However, the instances to which petitioners referred occurred after the issuance of the notice of deficiency for the years 1962 and 1963. The record here shows that respondent did finally obtain petitioners' books in a legal manner. Since respondent had legally obtained petitioners' books, we see nothing illegal in respondent's use of these books while they were in his possession to determine the civil tax liabilities of petitioners for the years 1964 through 1966. No fraud is charged against petitioners or even negligence, nor were any other additions to tax asserted against petitioners for any of the years 1964 through 1966. Petitioners' returns for these years were audited by respondent's agents while respondent was in possession of petitioners' books which he had subpoenaed for use in the investigation of Norman Egenberg. However, since respondent legally had possession of petitioners' books and would have had the right to have these books made available to him to audit petitioners' returns, in our view respondent's use of these *371 books in an audit of petitioners' returns purely for determining civil liability while they were in his possession does not cause the notice of deficiency issued as a result of that audit to be invalid. Whether the situation would be different if any criminal action had been brought or even a charge of civil fraud made against petitioners, we are not called upon to decide. Petitioners showed substantiation of the expenditures of most of the amounts they claimed on their returns as deductions. We have set forth in our findings the amounts we consider to be properly deductible. Some amounts spent by petitioners and claimed to be deductible were not proper deductions. The evidence does sustain petitioners' claim of the payment of the commissions which respondent did not concede at the trial to be deductible and we have found these commissions to be deductible. We have allowed in the years 1963 through 1966 only those travel and entertainment expenses which have been substantiated within the requirements of section 274. Since we conclude that Irene Dalis Loinaz' home was in New York City for Federal income tax purposes, we have not included in deductible expenses any meals or lodging *372 in New York City though we have included certain other transportation expenses which she had in New York going from rehearsals to costume fittings and to her voice instructor. We have not included in the deductible expenditures any amount of commuting expense. The record shows that Irene Dalis Loinaz' main employment throughout the years here in issue was by the Metropolitan Opera Association, Inc., in New York City. When her husband took a position in London, Mrs. Loinaz continued to live in New York City and spent very little time in London because of the nature of her work. In our view her tax home remained in New York City and she was not away from home in pursuit of a trade or business when she was in New York. She lived in London when she did for personal reasons only. Commissioner v. Flowers,326 U.S. 465 (1946). Mrs. Loinaz traveled extensively in her work and we have on the facts shown in our schedule of deductible expenses allowed as deductions all the amount of travel expenses which were substantiated for Mrs. Loinaz' engagements outside New York. Although the record is not as clear as it might be as to the portion of the amount paid by petitioners *373 for the E. Braun & Co. business for good will and the portion paid for physical depreciable assets, the record is clear that a substantial part of the payment was for the physical assets. We have therefore used our best judgment in determining the amount of the total cost applicable to the physical assets. We have concluded that $ 5,000 of the total cost was applicable to the depreciable assets. Respondent does not question the 10-year useful life for the assets used by petitioner and so we have concluded that petitioner is entitled to a deduction for depreciation on the assets of $ 500 in each of the years here in issue. We have also considered all of the facts and used our best judgment in the determination of the amount of deduction to which petitioners are entitled for use of their apartment for business purposes. Both petitioners made use of the apartment for business purposes and different parts of the apartment area were used by each for business purposes. We view this case as a purely factual one. Neither party has attempted to analyze all the various documents in this record and the import of all of the testimony to assist the Court in its task of determining the proper *374 amount of deductions. Petitioners merely argue that they basically substantiated all the deductions claimed on their returns and that respondent is merely picking at small items. This is to some extent true. However, there are in total a fair amount of items which were deducted that the record does not substantiate as proper deductions. Respondent lists on schedules the total substantiated items that he considered to be substantiated but does not separate in connection with Mrs. Loinaz' costumes and stage apparel items which are part of the amounts capitalized and depreciated by petitioner and items deducted as business expense. [2]
*375 It is clear from the record that some of the items that petitioner capitalized and depreciated over 3 to 5 years as concert gowns, furs, and costumes were clothing of a type which substituted for petitioner's general wearing apparel and therefore are items not properly deductible or includable as business depreciable assets. Other clothing and costumes were only for stage use and their cost is properly deductible or recoverable through depreciation deductions. We have excluded from deductible expense and from assets subject to depreciation the clothing of Mrs. Loinaz which we consider personal as distinguished from usable only for performances. Respondent has included in his schedule of items he considers deductible little of the amounts which were clearly substantiated by Mrs. Loinaz' lengthy oral testimony. With this state of the record and the issues here being purely factual, we have found as ultimate facts the amounts properly deductible by petitioners based on all of the evidence of record and in accordance with these ultimate findings hold these amounts to be properly deductible, and, except to the extent of respondent's concession as to other items, sustain his disallowances *376 of other amounts. Petitioners introduced no evidence to show error in respondent's determination of additions to tax under section 6651(a) for the years 1962 and 1963 and on brief make no argument that respondent erred in asserting these additions to tax. We therefore sustained respondent's assertion of additions to tax under section 6651(a) for the years 1962 and 1963. Decisions will be entered under Rule 155.
Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
1. The only transportation, hotel and lodging and subsistence claimed by petitioners for Mrs. Loinaz for this year were in connection with her German Tour where these expenses are included on this schedule. ↩
2. The amounts deducted under this heading on petitioners' returns for all years are the amounts of depreciation shown to be allowable on costumes and theatrical equipment and we have included the amounts we consider proper under this heading as part of depreciation. ↩
4. For 1966 the German engagement is referred to by petitioner as the "Hamburg Opera."↩
3. This is the total allowable expenses for the German Tour. Mrs. Loinaz' receipts from the German Tour should be included in her gross receipts. ↩
1. Itemized deductions not in issue for this year. ↩
2. Contribution was the only itemized deduction in issue for this year. ↩
3. This also includes other taxes which were claimed as one item for this year. ↩
4. The year 1966 was the only year an interest deduction was in issue.↩
2. There is some argument between the parties as to items of stage apparel which are properly deductible and items which should be capitalized and depreciated. We have followed the system used by petitioners on their return of considering such items as stage footwear and similar items of a very short useful life as deductible, and costumes, concert gowns, and stage equipment as subject to depreciation. We have combined the various items with one category of depreciation for Mrs. Loinaz' business. There is some authority for the proposition that the cost of business apparel is a deductible expense even if it has a useful life of more than one year. See Wilson John Fisher,23 T.C. 218 (1954), aff'd. 230 F. 2d 79 (C.A. 7, 1956), in which we allowed taxpayer to deduct cost of dress suit worn only in performing as a musician; Jerome Mortrud,44 T.C. 208 (1965), in which we allowed milk routemen to deduct cost of uniforms with dairy insignia on them; Sec. 1.262-1(b)(8), Income Tax Regs., allowing reserve officers to deduct as a business expense uniforms worn only when on active duty for training; and Rev. Rul. 67-115, 1967-1 C.B. 30↩, which allowed members of the armed forces to deduct as a business expense amounts paid for fatigue uniforms which could not be worn off-duty. However, since petitioners did capitalize costumes and stage apparel with a useful life of over one year and respondent does not object to the method used by petitioners but only to the propriety of including certain items, we have accepted the method used by petitioners on their returns.